# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUAN CARLOS BORUNDA and
MARIO ALBERTO BORUNDA,

        Plaintiffs,

v.                                                             No. CV 12-00396 WJ/WPL

JOHN F. KERRY, U.S. SECRETARY OF STATE,

        Defendant.

## ORDER DENYING PLAINTIFFS' MOTION IN LIMINE
## AND ADDRESSING OBJECTIONS TO EXHIBITS

**THIS MATTER** is before the Court upon the Omnibus Motion in Limine to Exclude Statements and Documents, **(Doc. 61)**, filed by Plaintiffs Juan Carlos Borunda and Mario Alberto Borunda on July 15, 2015; upon Defendant John F. Kerry's Objections to Plaintiffs' Exhibits, **(Doc. 69)**, filed July 17, 2015; and upon all responsive briefs thereto. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiffs' motion is not well taken and, therefore, is **DENIED**; and that Plaintiffs' objections are not well taken and, therefore, are **OVERRULED**. The Court also finds that Defendant's objections are well taken in part; accordingly, the Court **SUSTAINS IN PART, OVERRULES IN PART**, and **DEFERS RULING IN PART** on Defendant's objections.

**PLAINTIFFS' MOTION IN LIMINE**

Plaintiffs challenge Defendant's attempt to introduce at trial an affidavit signed by Lydia Borunda,[1] the Plaintiffs' mother, as well as an affidavit signed by Plaintiff Mario Borunda.[2] Both statements at issue were given at the U.S. Consulate in Ciudad Juárez, Chihuahua, Mexico on September 17, 2009.

Plaintiffs argue that at the time that she made her statement, their mother was recovering from a recent "severe depression and schitzophrenic [*sic*] episode" and had failed to take her prescribed anti-depressant that morning. They also claim that their mother was placed in a small room with posters of handcuffed people. Although she left at one point to visit a Social Security office to get some necessary paperwork, upon her return to that room, Plaintiffs say that their mother "believed that she was being detained and was not free to leave," and that she stayed there "without food or water or being able to go to the bathroom for about six hours." At the end of that time, they say a consular officer filled out a blank piece of paper and that their mother signed the affidavit without reading it. Plaintiff Mario Borunda claims that he, too, quickly signed an affidavit written out for him by the officer after he saw that his mother was "frantic."

Plaintiffs contend that these affidavits should be excluded from the trial as involuntary under "the Fourth Amendment exclusionary rule." However, as a general rule, neither the Supreme Court nor the Tenth Circuit applies the exclusionary rule to civil proceedings. *See, e.g.*, *United States v. Janis*, 428 U.S. 433, 453-54 (1976) (refusing to exclude from civil proceedings "evidence unlawfully seized by a state criminal enforcement officer" since doing so would not

---

[1] In his filings, Defendant refers to Plaintiffs' mother using the name Lydia Hernandez Hernandez, which is the name under which the affidavit in question was signed. For now, the Court will refer to Plaintiffs' mother as Lydia Borunda, the name listed in Plaintiffs' filings.

[2] Plaintiffs assert that this "objection" is made by "[t]he Plaintiff, Mario Borunda and his mother, Lydia Borunda." Lydia Borunda is merely a witness and as such she arguably has no standing to object to the introduction of her affidavit. However, because the exclusionary rule does not apply in these proceedings, the Court does not address this question any further.

likely "deter[] the conduct of state police so that it outweighs the social costs imposed by the exclusion"); *see also United States v. Peltier*, 422 U.S. 531, 538 (1975) ("[W]e simply decline to extend the court-made exclusionary rule to cases in which it deterrent purpose would not be served." (quoting *Desist v. United States*, 394 U.S. 244, 254 n.24 (1969)).

Exceptions apply when a civil proceeding is "quasi criminal" in nature, *see One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 697-98 (1965) (quotation omitted), or in some (but not all) administrative cases, *see, e.g.*, *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (refusing to apply the exclusionary rule in INS deportation actions); *Savina Home Indus., Inc. v. Sec'y of Labor*, 594 F.2d 1358, 1363 (10th Cir. 1979) (applying the exclusionary rule in OSHA proceedings). Yet, this is not a "quasi criminal" or administrative action, but is instead a declaratory action under 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201.

Although this action is not a civil deportation proceeding like that at issue in *Lopez-Mendoza*, the Court holds that, for substantially the same reasoning applied in that case, the deterrent value of applying the exclusionary rule in § 1503(a) actions, if any, is outweighed by the costs of applying that rule in such cases. Indeed, since a § 1503(a) action is not "a civil complement to a possible criminal prosecution" in the same manner as a civil deportation case, the likely deterrence value applied in the latter sort of case, *see* 468 U.S. at 1042-43, is not applicable here. Accordingly, the exclusionary rule cannot provide a basis for excluding the affidavits at issue.

Even assuming the exclusionary rule could apply in this case, it would not be appropriate to apply it under the facts before the Court. Although Plaintiffs cite caselaw for the general proposition that voluntariness is measured with reference to details of the interrogation and characteristics of the declarant, they cite no analogous cases where statements have been ruled to

be involuntary. Further, even if the Court could construe the unsworn statements of Plaintiffs' counsel as evidence,[3] Defendant correctly notes that Plaintiff has failed to describe any objective evidence of involuntariness. To the contrary, Mario and Lydia Borunda appeared voluntarily at the U.S. Consulate for an interview that was not criminal or quasi-criminal in nature, and there is no indication that either person's movement was restricted or that either person was unable to request or obtain food, water, or appropriate medication.

Plaintiffs also implicitly raise a hearsay argument by stating that Federal Rule of Evidence 801(d)(2), concerning statements by adverse parties, would not apply to Lydia Borunda because she is not a party to these proceedings. Certainly this argument does not apply to the affidavit of Plaintiff Mario Borunda. Moreover, as both parties have named Mario and Lydia Borunda as witnesses, a cursory analysis suggests that either party would be permitted to use the affidavits as impeachment evidence if the declarants' testimony at trial is inconsistent with the contents of the affidavits. *See* FED. R. CIV. P. 613(b); *see also United States v. Woody*, 250 F. App'x 867, 881 (10th Cir. 2007) (unpublished (citation omitted). Without more, and in the absence of an express hearsay challenge, the Court will not rule that the affidavits are inadmissible hearsay at this time.

For the reasons stated above, Plaintiffs' motion in limine is DENIED to the extent that it argues for the exclusion of the September 2009 affidavits of Mario and Lydia Borunda.

---

[3] Statements made by an attorney in a brief are not themselves evidence. *See, e.g.*, *American Stores Co. v. Comm'r of Internal Revenue*, 170 F.3d 1267, 1271 (10th Cir. 1999). Although Plaintiffs claim that their position is supported by the deposition testimony of Mario Borunda, they do not attach any transcripts of this testimony to their brief. Indeed, the only pieces of evidence attached to Plaintiffs' motion to exclude are the affidavits at issue, which themselves do not demonstrate any degree of involuntariness.

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S EXHIBITS**

Although Plaintiffs discuss other evidence in their motion in limine, technically they do not move to exclude them, but instead object to their admission. Thus, the Court construes the "Documentary Exhibits" portion of Plaintiffs' motion as objections to Defendant's exhibits.

I.    **Mexican Birth Certificates**

Plaintiffs object to the admission of "copies of computer generated print outs of the original hand written Mexican birth certificates of the Plaintiffs," arguing that the originals were fraudulently created. Their first challenge is under Rule 1003: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Plaintiffs also raise a challenge under Rule 901(a), saying that Defendant cannot "produce evidence sufficient to support a finding that the item is what the proponent claims it is," again because "the document[s] [are] the product of a fraud."[4] Finally, Plaintiffs contend that the documents cannot be authenticated under Rule 902(3), although they do not elaborate on this position.

As to the latter argument, Defendant responds that the Mexican birth certificates have been properly authenticated through the apostille process set forth in the 1961 Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents, *opened for signature* Oct. 5, 1961, 33 U.S.T. 883. Defendant further states that Rule 44(a)(2)(A)(ii) permits the use at trial of foreign documents certified under a relevant treaty. In the absence of little more than conclusory statements from Plaintiffs, the Court sees no reason at this time to doubt that the appropriate authentication process has been followed for these exhibits.

---

[4] Plaintiffs also cite Rule 104(a) here, apparently considering this matter to be a "preliminary question" of admissibility. This argument does not appear to be distinct from their general Rule 901(a) argument.

Plaintiffs argue that any copies of their Mexican birth certificates are inadmissible because the originals were fraudulently created. However, the veracity of the original Mexican birth certificates is a core factual question at the heart of this case, to be determined with reference to testimony and other evidence. If a party were to allege in a contract suit that the contract at issue was fraudulently created, the Court would certainly admit that contract into evidence in order to resolve the question of fraud. Likewise, the Court will overrule Plaintiffs' objection on Rule 901(a) grounds at this time. Further, since Plaintiffs have given no reason to believe that Defendant cannot appropriately authenticate any copies of their Mexican birth certificates at trial, the Court will overrule Plaintiffs' objection on Rule 1003 grounds for now.

Another reason counsels in favor of overruling Plaintiffs' objection to these documents: Plaintiffs themselves have always intended to introduce their Mexican birth certificates into evidence. Plaintiffs attached copies of their Mexican birth certificates to their complaint, filed in April 2012. *See* (**Doc. 1 Exs. B, F**), Birth Certificates. Plaintiffs also included their Mexican birth certificates on their own exhibit list. *See* (**Doc. 54**), Plaintiffs' Amended Exhibit List, at 1-2. The Court will not sustain Plaintiffs' objection to Defendant introducing these documents at trial when Plaintiffs themselves have given every indication that they, too, intend to introduce these documents into evidence at trial.

## II. Other Exhibits

Plaintiffs also object to most of Defendant's other proposed exhibits, specifically the following: (1) Chihuahua, Mexico Civil Registry Book Index for Book 0009; (2) Mexican Birth Registry Record of Plaintiff Juan Carlos Borunda; (3) Mexican Birth Registry of J.C.P.; (4) Mexican Birth Registry of M.H.H.; (5) Mexican Birth Registry Record of Plaintiff Mario Borunda; and (6) Mexican Birth Registry of M.R.B. Their objections to these documents

essentially mirror Plaintiffs' objections to the admission of copies of their Mexican birth certificates. Plaintiffs also voice objections to these exhibits "based on insufficient foundation as to the manner in which the document was obtained, chain of custody and the pedigree of the copies."

At this point, the parties have given the Court little indication as to what these exhibits actually are and what they purport to show. For example, the Court has no knowledge of the nature and contents of the Book 0009 registry index and no knowledge of the identities of J.C.P., M.H.H., and M.R.B., let alone their relevance to these proceedings, the likelihood that the documents are fraudulent, and the basis for any objection on Rule 902(3) grounds. Without more elaboration as to the bases for Plaintiffs' objections, the Court is in no position to sustain them. Thus, Plaintiffs' objections are overruled at this time.

### DEFENDANT'S OBJECTIONS TO PLAINTIFFS' EXHIBITS

I.  **Agreed Withdrawn Materials**

In a footnote, Defendant states that Plaintiffs' counsel has agreed to voluntarily withdraw eight exhibits relating to Plaintiff Mario Borunda, and therefore Defendant asks that these documents be stricken. Briefly, these exhibits are Mario Borunda's tax returns and statements from 2007 and 2008, his selective service registration card, his CDL certificate, and writing assessments from the late 1990s. As these documents have been voluntarily withdrawn, the Court sees no need to strike them. To the extent that Defendant objects to these withdrawn exhibits, the Court overrules that objection as moot.

### II.   Civil Registry Exhibits

Plaintiffs' Exhibits A:13 and B:32[5] are "Documents from [the] Civil Registry of Satevo, Chihuahua, Mexico" regarding the Plaintiffs' Mexican birth certificates. Plaintiffs represent that these exhibits "are certified court records that constitute the final judgment of the Mexican tribunal adjudicating the legitimacy of the Mexican birth certificates . . . . The court found after conducting an investigation into the matter that pursuant to Mexican law and procedure that [*sic*] the birth certificates are not valid."

Defendant's position is that Plaintiff's only disclosed these documents on July 14, 2015, with only two weeks to go before trial; that Federal Rule of Civil Procedure 37(c) requires the exclusion of late-disclosed evidence unless the failure to disclose was substantially justified or harmless; and that Plaintiffs' failure does not meet this Rule 37(c) standard. Plaintiffs counter that these documents are highly probative and relevant to core questions of fact in this case, that principles of comity require the Court to consider these exhibits, and that the "exclusion of critical evidence, in the absence of bad faith, is too severe a sanction."

Rule 37(c)(1) states that if a party fails to provide necessary documents as required during discovery, "the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1) (emphasis added). In determining whether a failure to disclose was substantially justified or harmless, the Court must consider the following factors: "(1) the prejudice or surprise to the party against whom the [evidence] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [evidence] would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

---

[5] See *infra* for the Court's order regarding the numbering of exhibits.

Regarding the first factor, the prejudice to Defendant is self-evident. To disclose what Plaintiffs themselves characterize as "critical evidence" on the eve of trial is to force Defendant to juggle his duty to prepare for trial with the new task of investigating the authenticity, veracity, and nature of such important documents with virtually no time to do so. In this light, Plaintiffs' argument that "Defendant would be in no better or worse position than if the records had been disclosed in a timely fashion" borders on disingenuous, even assuming that the documents are determined to be authentic. Of course, if the documents were determined to be inauthentic after the trial, their admission would be even more blatantly prejudicial. The Court finds Plaintiffs' late disclosure to be highly prejudicial to Defendant.

The second factor also weighs strongly against admission. Plaintiffs contend that "Defendant with all of his governmental resources has the ability to verify if the records are authentic Mexican records before trial." However, as noted above, Defendant's last-minute disclosure forces Defendant into that position, with few days to spare to both investigate these documents and prepare for trial. Plaintiffs are in no position to dictate that the United States allocate significant time and taxpayer money to hasten investigation of "critical evidence," with just days to go before trial, simply because Plaintiffs untimely disclosed this evidence.

Relatedly, it is also self-evident that admission of this evidence would require disruption of the trial setting. Plaintiffs have previously acknowledged that "Defendant presumably would require more time to fully investigate the validity of this crucial and potentially dispositive record." *See* (**Doc. 57**), Plaintiffs' Corrected Motion to Continue, at 2. Plaintiffs further claimed in the same filing that they also need more time to authenticate this evidence. *See id.* Defendant, too, asserted that he would require more time "to fully prepare and investigate" the evidence if it were admitted. *See* (**Doc. 60**), Defendant's Response. In short, the parties jointly agree that a

disruption of the trial setting would be necessary if these documents were admitted, and the Court now sees no reason to disagree with their position.

The final factor, concerning bad faith or willfulness, requires the Court to reflect on the circumstances of Plaintiffs' late disclosure. With respect to the Mexican judgment that apparently underlies these records, the Court has previously expressed curiosity as to "when the Mexican judgment was issued, when [Plaintiffs] learned about it, what steps they have previously taken to authenticate that judgment, and why they have failed to do so . . . with less than two weeks to go until the trial." *See* (**Doc. 68**), Order. Although several of these questions remain unanswered, Plaintiffs' counsel discloses for the first time, in response to Defendant's objections, that he "obtained" this evidence in March 2015, that the documents were not sent to defense counsel due to "oversight and a failure of supervision of office personnel," and that he "simply failed to verify that the records had been sent" until "the oversight was detected, albeit two weeks before trial."

The Court views this explanation with suspicion. Discovery in this case closed on February 13, 2014. Over a year later, on March 31, 2015—the very last day of the month in which Plaintiffs' counsel purportedly discovered this evidence—United States Magistrate Judge William P. Lynch held a status conference in this action. *See* (**Doc. 47**), Clerk's Minutes. The record does not reflect whether Plaintiffs disclosed the existence of this evidence at that status conference; however, since both parties concede that Defendant's counsel did not learn about this evidence until approximately one week ago, the Court assumes that the evidence was not discussed. At that time, Judge Lynch denied Plaintiffs' request to re-open discovery for a failure to show good cause. *See id.*

Shortly after Judge Lynch's status conference, the Court set the existing trial date. *See* **(Doc. 49)**, Trial Notice. For the next three and a half months, Plaintiffs again failed to point to their newly obtained evidence as a basis for delaying the trial setting so as to allow themselves and Defendant an opportunity to investigate and authenticate these documents. Nor did Plaintiffs seek Rule 72(a) review of Judge Lynch's denial of their request to open discovery again, which would have given them an opportunity to bring the matter directly to the Court's attention (and therefore to Defendant's attention, assuming that they had not already done so). Only on the morning of the Pretrial Conference did Plaintiffs disclose to the Court and Defendant the existence of the evidence in question, and even then they did not disclose the evidence itself to Defendant until the following day.

It is safely assumed that Plaintiffs' counsel was aware of the presumptive inadmissibility of exhibits produced after the Court-ordered end of discovery. *See* FED. R. CIV. P. 37(c)(1); *see also Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) ("[A] Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (citation omitted)). Although parties often resolve these issues in an informal manner, it is apparent that Plaintiffs and Defendant did not engage in such an effort here, since by all accounts Defendant was not aware of this evidence until approximately one week ago. Even assuming Plaintiffs' counsel believed that it had produced this evidence to defense counsel, Plaintiffs did not work with Defendant to secure the admissibility of late-disclosed evidence, they appear not to have raised their late discovery of this evidence with Judge Lynch as a basis to re-open discovery, they did not raise it in objections to Judge Lynch's decision, and they waited until just before trial to raise these matters as a basis to

continue the trial setting. Under these circumstances, the Court cannot find that Plaintiffs' failure to disclose was done in good faith.

However, even if this were not the case, "good faith alone would not be enough to overcome the other factors." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002). In light of the prejudice to Defendant, the limitations on Defendant's ability to cure that prejudice, and the disruption to the trial setting that would be required if these documents were admitted, the Court finds that Plaintiffs' failure to disclose was not substantially justified or harmless. Accordingly, exclusion is appropriate.

Plaintiffs correctly observe in their response that Rule 37(c)(1) contemplates sanctions "[i]n addition to or instead of" exclusion of the evidence. Defendant has not asked for "payment of the reasonable expenses, including attorney's fees," and since this matter is set for a bench trial, there is no jury to inform of the discovery violation. *See* FED. R. CIV. P. 37(c)(1)(A)-(B). However, Rule 37(c)(1)(C) also gives the Court leeway to craft "other appropriate sanctions." Although exclusion of the Satevo civil registry entries is the appropriate sanction here, the Court is also mindful of the potentially critical nature of these documents to Plaintiffs' case.

Thus, although the Court sustains Defendant's objection and orders that Plaintiffs' civil registry exhibits are excluded from trial, the Court will allow Plaintiffs' counsel at trial to move to keep the record open and allow the record to be supplemented at some future point with these registry exhibits. The Court will allow Defendant's counsel to respond, and the Court will then make a decision on whether the record should be supplemented by Plaintiffs' proffered evidence or whether the record should be closed at the end of trial. If the Court keep the record open to allow Plaintiffs the opportunity to supplement it, the Court will of course allow Defendant sufficient time to review and investigate the civil registry exhibits, and Defendant will also be

allowed to supplement the record. On the other hand, if the Court denies Plaintiffs the opportunity to supplement the record, then the record will be closed at the conclusion of the bench trial scheduled for July 29 through 31, 2015.

### III.     Plaintiffs' Mother's Medical Records

Defendant also objects to Plaintiffs' Exhibit C:27, Lydia Borunda's medical records, on the grounds that they too were only disclosed last week. Defendant again points to Rule 37(c)(1). Plaintiffs argue that the records "are essential to consider on the question of the voluntariness of her statements at the US Consulate Office."

Although the Court does not conclude that Plaintiffs acted in bad faith in withholding these particular documents until two weeks before trial, the other three *Woodworker's Supply* factors counsel against admission of these records for substantially the same reasons discussed in the above analysis concerning the Satevo civil registry exhibits. More specifically, the last-minute disclosure of these records unduly prejudices Defendant, whose ability to cure this prejudice through timely review is temporally limited; additionally, to allow additional time for such review would inappropriately disrupt the trial setting. Defendant's objection to this exhibit is sustained, and these records are hereby excluded from trial.

### IV.     Deposition

Defendant's final objection concerns Plaintiffs' exhibit C:28, the "Video Taped Deposition of Ms. Viscaino." The Court has previously set a deadline of July 24, 2015, for the parties to resolve any disputes regarding deposition testimony and to notify the Court if resolution has not been reached. The Court will therefore defer ruling on this objection at this time.

**EXHIBIT NUMBERING**

As a final matter, neither Plaintiffs nor Defendant have complied with the Court's previous instructions concerning the ordering of exhibits. The Court has directed that "[e]xhibits shall be marked and identified (Plaintiff's . . . by *numbers* and Defendant's . . . by *letters* . . .)." *See* (**Doc. 40 Att. 1**), Preparation for Trial. Plaintiffs' amended exhibit list proposes a confusing scheme of lettering *and* numbering for their exhibits. Defendant, meanwhile, has failed to number or letter his exhibits at all.

No later than the close of business on **July 27, 2015**, the parties shall each file revised exhibit lists that reflect the numbering and lettering scheme previously ordered by the Court. More specifically, Plaintiffs' exhibits shall be numbered sequentially (1, 2, 3, . . .), and Defendant's exhibits shall be lettered sequentially (A, B, C, . . . ). Although exhibits may be removed from the parties' existing lists to reflect the voluntary withdrawal of documents and the exclusion of evidence required under this Order, no additional exhibits may be added to the exhibit lists except by the express agreement of all parties, which shall be noted in any revised exhibit list.

**CONCLUSION**

IT IS THEREFORE ORDERED that, for the foregoing reasons, Plaintiffs' Omnibus Motion in Limine, (**Doc. 61**), is **DENIED**; Plaintiffs' objections in that same document are **OVERRULED**; and Defendant's objections, **(Doc. 69)**, are **SUSTAINED IN PART, OVERRULED IN PART, and DEFERRED IN PART** as herein described.

SO ORDERED

_____
UNITED STATES DISTRICT JUDGE